UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO. 0:13-cv-61120-KMM-EGT

UNIVERSITY OF FLORIDA RESEARCH
FOUNDATION, INC. and RAPID MOBILE
TECHNOLOGIES, INC.

           Plaintiffs/Counter-Defendants,

vs.

MOTOROLA MOBILITY LLC,

           Defendant/Counter-Plaintiff.

_____/

## OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL

Plaintiffs Rapid Mobile Technologies, Inc. and University of Florida Research Foundation, Inc. (collectively "Rapid Mobile" or "Plaintiffs") filed their Motion to Compel (Dkt. 39) ("Motion"), seeking documents and information concerning sales of certain cellular phones of Defendant Motorola Mobility LLC ("Motorola") that were made and sold *outside the United States*. As explained herein, information about such foreign activities is not relevant to any issue in this lawsuit, such that the Motion should be denied.

**I.**     **Information About Motorola Cellular Phones Made And Sold *Outside the United States* Cannot Be Relevant To Any Issue In This Lawsuit**

A fundamental aspect of U.S. patent law is that the rights conferred by the patent grant are territorially restricted to what occurs within the United States. Thus, the patent statute defines "infringement" as something occurring within the boundaries of the United States:

> [W]hoever without authority makes, uses, offers to sell, or sells any patented invention, ***within the United States***, or imports ***into the United States*** any patented invention during the term of the patent therefor, infringes the patent.

Case No. 0:13-cv-61120-KMM-EGT

35 U.S.C. §271(a) (emphasis added).

Therefore, as the Supreme Court has explained, "[i]t is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country." *Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 441 (2007).

Consequently, there can be no infringement whatsoever – and thus no damages – relating to any of Motorola's cellular phones that are made and sold *outside the United States* and discovery into such activities, which cannot be relevant to any aspect of this lawsuit, should be denied.

## II.    The Patent-In-Suit Does Not Cover Any Cellular Phones

Above and beyond the territorial restriction to U.S. activities only, a critical flaw in Rapid Mobile's Motion is that the patent-in-suit does not include any claims that cover any cellular phones themselves, or any method of making cellular phones.[1]  Instead, the patent is directed to a "Network Emulator" (Complaint, Dkt. 1, Ex. A, p. 1) – something that, according to Rapid Mobile's Complaint (¶11), might be used "to model and test various mobile network configurations and scenarios."  Consequently, no cellular phone made anywhere (either inside or outside the U.S.) could infringe Rapid Mobile's patent.

Rapid Mobile recognizes that it may seek only "damages caused by [Motorola's alleged] *infringement* of the '330 Patent."  (Complaint, Dkt. 1, p. 7) (emphasis added).  Indeed, it is

---

[1] The patent claims are restricted to the equipment and methods for "emulating" "mobile network communications."  Claims 1-10 are directed to "[a] system for emulating mobile network communications."  Claims 11-19 are directed to "[a] method of emulating mobile network communications."  Claims 20-21 are directed to "[a] computer readable storage medium for use in emulating mobile network communications."

2

black-letter patent law, explicit in the statute, that "damages" must be "compensat[ion] for the infringement."  35 U.S.C. §284 ("Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court.").

Thus, although Rapid Mobile might contend that its alleged damages could be measured by the construction and operation of an accused "Network Emulator," the alleged damages cannot extend to any of Motorola's cellular phones themselves – regardless of where they might be made or sold – because no cellular phone could infringe the patent.  Accordingly, information relating to Motorola sales of cellular phones in any jurisdiction cannot constitute any aspect of Rapid Mobile's alleged damages.  This is particularly true based on the fundamental territorial aspects of U.S. Patent Law discussed above.  Notwithstanding the fact that cellular phone sales information is not relevant to the Plaintiffs infringement allegations, Motorola nevertheless agreed to produce U.S. sales data for its cellular phones as explained below in section III. Plaintiffs now seek to turn this eminently fair compromise against Motorola, by attempting to expand discovery into non-U.S. sales information that is not relevant to any issue in this case.

### III.    Rapid Mobile Fails To Show Any Relevance For The Requested Information Concerning Motorola's Manufacture And Sale Of Cellular Phones *Outside The United States*

Even though, as discussed above, none of Motorola's cellular phones could possibly infringe the patent-in-suit (because the patent is directed to a "Network Emulator"), Motorola nevertheless agreed to produce *U.S. sales data* for its cellular phones that had been tested with

3

the accused device (referred to as a "Drive Test Simulator").  In view of the territorial restriction on patent rights, this seems to have been an eminently fair compromise.  Yet, Rapid Mobile now attempts to turn this compromise against Motorola.  Rapid Mobile demands not only the production of Motorola's U.S. sales data, but also information about Motorola's manufacture and sale of cellular phones outside the U.S. – information that has no possible legitimate use in this lawsuit.

Although Rapid Mobile has scoured the records for case law dating back more than 130 years, none of Rapid Mobile's cited authority supports its argument that it should be allowed discovery into Motorola's cellular phones that were made and sold outside the United States.  To the contrary, the very case law that Rapid Mobile relies upon shows that such cellular phones have no bearing upon the alleged damages, or any other issue, in this case.

Contrary to Rapid Mobile's representations (Motion, pp. 5, 6), *Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573 (Fed. Cir. 1983), says *nothing whatsoever* about a "patentee" obtaining damages based upon "sales of overseas products developed by an infringing machine located in the United States" or a patentee's "loss" being "calculated in part by oversea sales that benefited from infringement in the United States."  Such statements appear nowhere in *Central Soya*.  *Central Soya* involved a patent entitled "Method of Making a Meat Product" in which the Federal Circuit reviewed the award of damages based upon lost profits.  *Central Soya*, 723 F.2d at 1575.  *Central Soya* explained that "[t]he proper measure of damages is that amount which will compensate the patent holder for his pecuniary loss attributable to the infringing acts." (citing 35 U.S.C. §284).  The *Central Soya* defendant argued that the patentee should not be able

Case No. 0:13-cv-61120-KMM-EGT

to recover lost profits damages "based upon [defendant's] sale of breaded pork loin products" because the patent covered only a process for making them.  Yet, the defendant's pork loin fritters were made by infringing the plaintiff's process patent *in the United States* (specifically, Oklahoma City, Oklahoma).  *See Central Soya Co. v. Geo. A. Hormel & Co.*, 645 F.2d 847, 849 (10th Cir. 1981).  By contrast with the instant case, *none* of Motorola's cellular phones are made by any patented process asserted in this case and, in any event, Motorola's cellular phones that were *made and sold outside the United States* are beyond the reach of U.S. patent protection altogether.  *See Microsoft Corp.*, 550 U.S. at 441.

Rapid Mobile misapplies other case law characterize recoverable damages as being related to "the value of the benefit conferred to the infringer by use of the patented technology." (Motion, Dkt. 39, pp. 6-7) (quoting *Powell v. Home Depot U.S.A. Inc.,* 663 F.3d 1221, 1240 (Fed. Cir. 2011)).[2]  Yet, all such arguments ultimately undercut Rapid Mobile's argument, because those cases involve damages based upon the infringement of a patent.  The *Powell* case "presents an issue regarding a use-based reasonable royalty."  *Powell*, 663 F.3d at 1237.  In the instant case, however, there is no infringing "use" involving Motorola's cellular phones.  As explained above, Rapid Mobile does not even allege that Motorola's cellular phones (including those made and sold abroad) infringe any patent rights of Rapid Mobile.  It follows that there is no basis for seeking discovery of such foreign sales data.

---

[2] Rapid Mobile makes the same point with its citations to *Georgia-Pacific Corp. v. U.S. Plywood Corp.,* 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), and *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,* 575 F.2d 1152, 1159 (6th Cir. 1978).  (Motion, Dkt. 39, p. 6).

4846-9301-1734.1

Case No. 0:13-cv-61120-KMM-EGT

Rapid Mobile misunderstands the case law that, according to its Motion, supports the view that courts may "apply a reasonable royalty to the 'fruits' of an infringing manufacturing machine or process, even if those fruits are not themselves infringing" and mischaracterizes such cases, by representing that they support this view "even if those fruits are sold overseas." (Motion, Dkt. 39, p. 7).  In truth, *none* of the cases[3] that Rapid Mobile relies upon for its proposition say anything about a patentee potentially obtaining damages for products made and sold overseas.

*The Ketchum Harvester Co. v. The Johnson Harvester Co.,* 8 F. 586 (N.D.N.Y. 1881), cited in Rapid Mobile's Motion on pages 6-7, does not support Rapid Mobile's position, either. According to *Ketchum*, the U.S. patent involved in that case was violated by the infringer's *manufacture* of patented machines *in the United States*.  *Ketchum*, 8 F. at 587.  Although the machines in that case, once made, were sold abroad, *Ketchum* makes clear that it was the infringing manufacture in the U.S. that gave rise to damages.  *Id.* ("to deprive the patentee of all damages *for unlawful making here*, because the article is sold abroad, is to deprive him of part of what his patent secures to him.") (Emphasis added).  In fact, *Ketchum* explained that "the patent could give no protection abroad in the sale of machines abroad."  *Id.*  Similarly, Motorola's cellular phones that were *made and sold abroad* cannot figure in any of Rapid Mobile's alleged damages.  Thus, there is also no basis for Rapid Mobile to request discovery of such foreign manufacturing and sales information that is not relevant to any issue in this case.

---

[3] *McKee Glass Co. v. H.C. Fry Glass Co.,* 248 F. 125 (3d Cir. 1918); *Horvath v. McCord Radiator & Mfg. Co.,* 100 F.2d 326 (6th Cir. 1938); and *Devex Corp. v. General Motors Corp.,* 494 F. Supp. 1369 (D. Del. 1980).

Case No. 0:13-cv-61120-KMM-EGT

## IV.    Rapid Mobile Mischaracterizes The Circumstances Of Its Motion

Rapid Mobile's descriptions of the discovery requests presently at issue, and Motorola's responses thereto, are inaccurate and exaggerated.  Although Rapid Mobile refers to requests for production that it served as early as July 17, 2013 (Motion, p. 3), its Motion is actually directed only to information sought in its Interrogatories 2 and 3,[4] which Rapid Mobile served on August 6, 2013 and which Motorola answered on September 16, 2013.  Rapid Mobile's remark that "Motorola has not produced any documents in response to the July 17, 2013, document requests" (Motion, p. 3) is not only untrue,[5] but also has no relationship to the present Motion.

Rapid Mobile's suggestion (Motion, p. 8) that it will suffer a hardship on account of the "substantial delay" in obtaining documents sought by its Motion, because they might be needed for "claim construction discovery" (which is to be completed by October 21, 2013).  Rapid Mobile's argument is nonsense.  There is no plausible argument that foreign sales records for

---

[4] **INTERROGATORY NO. 2:**

For those devices and models listed in Interrogatory No. 1, identify how many devices and Models Motorola has sold worldwide after testing such devices and models in each and every DTS.

**INTERROGATORY NO. 3:**

For those sales identified in Interrogatory No. 2, identify on an annual basis and with respect to each model, the gross sales revenue, net sales revenue, and, to the extent any different, gross profits and net profits, that Motorola has enjoyed, and explain what costs Motorola deducts from gross revenue and gross profits in determining nets sales revenue and net profits.

[5] Without explanation, Rapid Mobile belittles Motorola's production of documents in a co-pending employment lawsuit (Motion, p. 3), *Hernandez v. Motorola Mobility, Inc.*, No. 12-60930-CIV-COHN/SELTZER (S.D. Fla.) – documents that happen to encompass the majority of documents believed to be responsive to Rapid Mobile's discovery requests in this case.  In addition, Rapid Mobile incorrectly suggests that such documents were obtained only on account of its "urgings" (Motion, p. 3) and fails to acknowledge that those documents had been in the possession of Rapid Mobile's counsel of record in this case, since *before* the instant lawsuit was even filed.

7

Motorola's cellular phones could have any role in claim construction and Rapid Mobile offers no explanation for its representation to the contrary.

Rapid Mobile's assertion (Motion, p. 9), to the effect that Motorola "has refused to commit to any timeframe" for producing documents, is simply untrue.  Rapid Mobile was well aware that new trial counsel for Motorola were in the process of gaining admission *pro hac vice*, when Rapid Mobile was planning to file its Motion.  (*See* Dkt. Nos. 38, 39) (motions for admission *pro hac vice* filed September 20, 2013, five days before Rapid Mobile filed its Motion).  Yet, Motorola repeatedly assured Rapid Mobile that it would be producing the documents identified in its Interrogatory Responses.  In fact, Motorola has already produced the identified documents (concerning Motorola's cellular phone sales within the U.S.).

In short, Rapid Mobile's Motion falsely depicts Motorola's efforts to comply with its discovery obligations.  Ultimately, the only issue that is actually in dispute, in this Motion, is whether Rapid Mobile may discover information about Motorola's manufacture and sale of cellular phones outside of the United States.  As explained above, such information is not properly discoverable in this case.

**V.**    **Rapid Mobile's Improper Demand for "Emergency" Relief**

Rapid Mobile has compounded the error of its original Motion (Dkt. 39) by filing a subsequent motion (Dkt. 46) that purports to seek relief that Rapid Mobile had failed to request in its original Motion.

This new filing is styled as an "Emergency Supplement" to Rapid Mobile's Motion that seeks to "Urgently Reurge and Focus the Requested Relief."  (Dkt. 46, p. 1).

Case No. 0:13-cv-61120-KMM-EGT

Motorola will address the merits of Rapid Mobile's "Emergency Supplement" pursuant to the Court's rules. However, aside from such merits-based reasons for denying Rapid Mobile's "urgently reurged" and "focus[ed]" request, the "Emergency Supplement" constitutes an abuse of the Court's emergency procedures. Specifically, the "Emergency Supplement" involves a decidedly non-urgent discovery matter – one that Rapid Mobile should have raised, if at all, in its original Motion, no less. There is no legitimate "emergency" that might warrant Rapid Mobile's demand for the Court's immediate attention. *See Privitera v. Amber Hill Farm, LLC*, No. 5:12-cv-7-Oc-32TBS, 2012 WL 1900559, at *1 (M.D. Fla. May 24, 2012) (criticizing a purported emergency motion for a protective order as one not based on a true emergency and explaining that "it is fundamentally wrong to characterize a matter as an emergency when it obviously is not an emergency").

Indeed, Rapid Mobile's "Emergency Supplement"[6] failed to comply with L.R. 7.1(e), which requires a showing of "good cause" for an accelerated proceeding and demands that the aggrieved party "set forth in detail the necessity for such expedited procedure." Rapid Mobile's "Emergency Supplement" actually demonstrates the contrary, stating that Rapid Mobile "waited three months and lost precious time so waiting" (Dkt. 46, p. 4) before alerting the Court to the so-called "emergency." The explanation that it "cannot afford to await *another three months*"

---

[6] Rapid Mobile's characterization of its paper as a "Supplement" to its earlier-filed Motion (Dkt. 39) – suggesting that a diligent party would have requested such relief when it filed the Motion, some two weeks ago – also belies the lack of any real "emergency." In truth, however, the "Supplement" description is inaccurate, because – as explained above – Rapid Mobile's Motion (Dkt. 36) was directed to certain interrogatory responses served on September 16, 2013. The responses to requests for production that are the subjects of the "Emergency Supplement" are a month older still (served August 16, 2013).

9

Case No. 0:13-cv-61120-KMM-EGT

(Dkt. 46, p. 4) (emphasis added) for the relief sought exposes Rapid Mobile's cry for an

expedited hearing as particularly hollow.

## **CONCLUSION**

For the reasons set forth herein, Motorola respectfully requests that the Court deny Rapid

Mobile's Motion.

Dated: October 15, 2013.

Respectfully submitted,

s/ Samuel A. Lewis

By:_____

James A. Gale / Fla. Bar No. 371726
E-mail:  jgale@feldmangale.com
Samuel A. Lewis / Fla. Bar No. 55360
E-mail: slewis@feldmangale.com
FELDMAN GALE, P.A.
One Biscayne Tower – 30th Floor
2 S. Biscayne Boulevard
Miami, Florida 33131-4332
Telephone: 305-358-5001
Facsimile: 305-358-3309

and

Matthew B. Lowrie, adm. *pro hac*
E-mail:  mlowrie@foley.com
Robert J. Silverman, adm. *pro hac*
E-mail:  rsilverman@foley.com
Foley & Lardner LLP
111 Huntington Avenue
Boston, MA 02199-7610
Telephone:  617-342-4000
Facsimile:  617-342-4001

**Attorneys for Motorola Mobility LLC**

10

Case No. 0:13-cv-61120-KMM-EGT

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 15, 2013, the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

s/ Samuel A. Lewis

_____

11

Case No. 0:13-cv-61120-KMM-EGT

**SERVICE LIST**
*University of Florida Research Foundation, Inc., et al. v. Motorola Mobility LLC*
Case No. 0:13-cv-61120-KMM-EGT

Jennifer Meksraitis
E-mail: meksraitis@yahoo.com
Cory Meltzer
E-mail: cory@meltzermathis.com
MELTZER & MEKSRAITIS, LLC
Counsel for Plaintiffs
4000 North Federal Highway, Suite 202
Boca Raton, FL 33431
Telephone No.: (561) 300-3347
Facsimile No. (561) 300-3448

Daniel J. Schwartz, *adm. pro hac*
E-mail: dschwartz@seyfarth.com
Matthew A. Werber, *adm. pro hac*
E-mail: mwerber@seyfarth.com
Vincent M. Smolczynski, *adm. pro hac*
E-mail: vsmolczynski@seyfarth.com
SEYFARTH SHAW LLP
131 South Dearborn Street, Suite 2400
Chicago, Illinois 60603
Telephone: 312-460-5000
Facsimile: 312-460-7000

Steve Lundwall
E-mail:  steve@lundwall-law.com
LUNDWALL Law, PLLC
Counsel for Plaintiffs
8969 Meadow Drive
Sundance, UT 84604
Telephone No.: (832) 209-4206

4851-3150-0310, v.  1

12

4846-9301-1734.1